SCOTLAND COUNTY SCHOOLS, PETITIONER v. DONNA F. LOCKLEAR AND EMPLOY-
MENT SECURITY COMMISSION OF NORTH CAROLINA, RESPONDENTS

No. COA08-795

(Filed 19 May 2009)

**1. Unemployment Compensation— provisional teacher—failure to comply with licensure requirements**

The superior court did not err in an unemployment case by applying N.C.G.S. § 96-14(2b) because claimant provisional teacher's termination was based upon her failure to comply with the employer's licensure requirements and not upon misconduct or substantial fault.

**2. Unemployment Compensation— sufficiency of findings of fact—disqualification from benefits**

The superior court erred by concluding that claimant was disqualified from unemployment benefits under N.C.G.S.

§ 96-14(2b), and the case is remanded to the superior court for further remand to the Employment Security Commission to make appropriate findings of fact under N.C.G.S. § 96-14(2b) to determine whether there was a disqualification from unemployment benefits, because: (1) the Commission's findings were predicated upon an erroneous legal theory under N.C.G.S. § 96-14(2) and (2a) rather than the correct legal theory under section (2b); (2) there were no findings that specifically discussed the requirements of N.C.G.S. § 96-14(2b); (3) the status of claimant's provisional license is not discussed and is unclear from the record; and (4) there are no findings as to whether her failure to procure the full license required for her continued employment was within her power to control, guard against, or prevent.

Judge STROUD concurring in part and dissenting in part.

Appeal by respondent Commission from judgment entered 5 March 2008 by Judge Robert F. Floyd, Jr. in Scotland County Superior Court. Heard in the Court of Appeals 4 December 2008.

*Williamson, Dean, Williamson & Sojka, L.L.P., by Nickolas J. Sojka, Jr., and Daniel B. Dean, for petitioner-appellant.*

*Thomas S. Whitaker, Chief Counsel, by Thomas H. Hodges, Jr., for respondent-appellant Employment Security Commission of North Carolina.*

*Tharrington Smith, L.L.P., by Ann L. Majestic & Robert M. Kennedy and North Carolina School Boards Association, by Allison B. Schafer, Amicus Curiae for North Carolina School Boards Association.*

STEELMAN, Judge.

The superior court correctly concluded that the Commission erred in applying N.C. Gen. Stat. §§ 96-14(2) and (2a) rather than § 96-14(2b) to Locklear's claim for unemployment benefits. The Commission did not make sufficient findings of fact for this Court to engage in effective appellate review of the issues presented under N.C. Gen. Stat. § 96-14(2b), and this matter is remanded for further findings of fact.

I. Procedural and Factual Background

The record in this matter reveals the following: The Scotland County Schools (employer) hired Donna Locklear (claimant) as a lat-

eral-entry kindergarten teacher in 2003. As a lateral-entry teacher, claimant possessed a provisional teaching license. To retain her position, claimant was required to pass a state licensing examination known as "PRAXIS." On 30 October 2006, claimant was notified that her provisional teaching license had expired, and it was "essential that [she] complete all requirements prior to May 1, 2007 or risk the possibility of not being reemployed for the 2007-08 school year." On 14 June 2007, claimant was terminated from her position for failure to pass the PRAXIS exam.

Claimant filed for unemployment benefits effective 22 July 2007. On 1 September 2007, her claim was denied by the Employment Securities Commission (Commission) on the basis of N.C. Gen. Stat. § 96-14(2). The Adjudicator determined that "Claimant was separated from this job because she did not pass the test which was required for continued employment." Claimant appealed.

Following a 2 October 2007 hearing, an Appeals Referee ruled that claimant was not disqualified for benefits under N.C. Gen. Stat. § 96-14(2) because she was not "discharged for substantial fault or misconduct." Employer appealed. On 6 November 2007, the Commission affirmed the decision of the Appeals Referee.

On 6 December 2007, employer filed a Petition for Judicial Review in Scotland County Superior Court. On 24 March 2008, the superior court entered an order reversing the decision of the Commission, applying N.C. Gen. Stat. § 96-14(2b) rather than § 96-14(2), and ruling that, upon the findings of fact made by the Commission, claimant was disqualified under § 96-14(2b) from receiving unemployment benefits. Commission appeals.

## II.  Standard of Review

"[W]hen judicial review is sought of decisions of the Commission on unemployment benefits, 'the findings of fact by the Commission, if there is evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.' " *Williams v. Burlington Industries, Inc.*, 318 N.C. 441, 448, 349 S.E.2d 842, 847 (1986) (quoting N.C.G.S. § 96-15(i) (1985)); N.C. Gen. Stat. § 96-15(i) (2007).

In reviewing ESC decisions the superior court must determine whether the facts found by the Commission are supported by any competent evidence and whether those facts support the Com-

mission's conclusions of law. *Employment Security Comm. v. Young Men's Shop*, 32 N.C. App. 23, 231 S.E.2d 157, *disc. rev. denied*, 292 N.C. 264, 233 S.E.2d 396 (1977). Additionally, "[i]f the findings of fact made by the Commission, even though supported by competent evidence in the record, are insufficient to enable the court to determine the rights of the parties upon the matters in controversy, the proceeding should be remanded to the end that the Commission make proper findings." *In re Bolden*, 47 N.C. App. 468, 471, 267 S.E.2d 397, 399 (1980).

*Dunlap v. Clarke Checks, Inc.*, 92 N.C. App. 581, 583-84, 375 S.E.2d 171, 173 (1989). The Commission's findings of fact are binding if supported by any competent evidence, but its conclusions of law are reviewed *de novo. Housecalls Nursing Servs. v. Lynch*, 118 N.C. App. 275, 278, 454 S.E.2d 836, 839 (1995); N.C. Gen. Stat. § 96-15(i).

### III.  N.C. Gen. Stat. § 96-14(2b) is the Controlling Statute

**[1]** In its first argument, the Commission contends that the superior court erred in applying N.C. Gen. Stat. § 96-14(2b). We disagree.

The 1985 General Assembly enacted subsection (2b) of N.C. Gen. Stat. § 96-14, which states that an individual shall be disqualified for benefits:

> For the duration of his unemployment beginning with the first day of the first week during which or after the disqualifying act occurs with respect to which week an individual files a claim for benefits if it is determined by the Commission that the individual is, at the time such claim is filed, unemployed because the individual has been discharged from employment because a license, certificate, permit, bond, or surety that is necessary for the performance of his employment and that the individual is responsible to supply has been revoked, suspended, or otherwise lost to him, or his application therefor has been denied for a cause that was within his power to control, guard against, or prevent.

N.C. Gen. Stat. § 96-14(2b) (2007).

The superior court ruled that:

> 4. The Employment Security Commission's conclusion of law that "the evidence fails to show that claimant was discharged from the job for substantial fault or misconduct connected with

the work" improperly applies the law and is irrelevant to the findings of fact.

5. The case at bar is governed by G.S. 96-14(2b) . . . .

The Commission made seven findings of fact, four of which addressed the licensure requirements of claimant's employment. Specifically, the Commission found that: claimant was discharged because she failed to meet the requirements needed to maintain her teaching position; to legally retain her position, claimant was required to pass the PRAXIS test; and, despite taking preparatory classes and sitting on multiple occasions, claimant "was unable to pass." Based upon these findings, it is clear that claimant's termination was based upon her failure to comply with employer's licensure requirements and not upon misconduct or substantial fault. Because the termination did not implicate the misconduct or substantial fault provisions of N.C. Gen. Stat. § 96-14, we hold that the trial court correctly concluded that the controlling statute was subparagraph (2b) of N.C. Gen. Stat. § 96-14.

This argument is without merit.

## IV.  Findings Under N.C. Gen. Stat. § 96-14(2b)

[2] In its second argument, the Commission contends that the superior court erred in concluding that the claimant was disqualified from unemployment benefits pursuant to N.C. Gen. Stat. § 96-14(2b), *supra*. We agree.

In its entirety, conclusion of law 5 in the order reads:

5. The case at bar is governed by G.S. 96-14(2b) and the claimant's employment was terminated because of her failure to obtain a teaching license or certificate necessary for the performance of her employment, through her failure to achieve a passing score upon the PRAXIS II examination, and to do so was within her power to control, guard against or prevent.

To affirm the ruling of the superior court, this Court must determine that this conclusion is supported by the Commission's findings of fact and did not require further findings by the superior court. *Burlington Industries*, 318 N.C. at 448, 349 S.E.2d at 847 (the jurisdiction of the superior court is limited to questions of law).

N.C. Gen. Stat. § 96-14(2b) is not a paragon of clarity. It is not clear from the face of the statute whether the clause "a cause that

was within his power to control, guard against, or prevent[]" modifies the entire section, or only the last portion, of the statute. When confronted with such an ambiguity, this Court looks to both the legislative history of the relevant section and the section's context within the entire statute. *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).

N.C. Gen. Stat. § 96-14(2b) was enacted by the General Assembly as part of the 1985 Session Laws, Chapter 552, in order to "make[] clear that benefits are not payable to an individual where his unemployment is caused by losing a license or certificate required for his work for reasons[1] that he could have prevented."House Committee on Employment Security Report, *Explanation of House Bill 567*, (May 1, 1985). This is consistent with the declaration of public policy contained in N.C. Gen. Stat. § 96-2, which is that the State of North Carolina shall set aside unemployment reserves "to be used for the benefit of persons unemployed through no fault of their own." N.C. Gen. Stat. § 96-2 (2007).

We hold that all of N.C. Gen. Stat. § 96-14(2b) is subject to the requirement that the loss or denial of licensure must result from a cause that was within the power of the employee to "control, guard against, or prevent." We further hold that this determination is a question of fact, not a question of law.

In the instant case, the Commission found that:

3. The claimant was discharged from this job because she failed to meet the requirements needed to maintain the position for which she had been hired.

4. To legally retain her position as a teacher, the claimant was required to pass a test called Praxis.

5. The claimant took all training classes, etc. offered to prepare for the test, and she took the test on several occasions. The claimant was unable to pass the test.

6. The claimant was informed that she would not be allowed to continue in her position as she had not passed the rest [sic] within the allotted time.

The Commission's findings in the instant case were predicated upon an erroneous legal theory under N.C. Gen. Stat. § 96-14(2) and

1. The example provided by the House Committee is that of "a truck driver who loses his driver's license because of speeding convictions or DWI, etc."

(2a), rather than the correct legal theory under section (2b). There are thus no findings that specifically discuss the requirements of N.C. Gen. Stat. § 96-14(2b). The status of claimant's provisional license, and its relationship to a full license, are not discussed and are unclear from the record. Further, there are no findings as to whether her failure to procure the full license required for her continued employment was within her "power to control, guard against, or prevent." It is not the role of the trial court or appellate courts to make findings of fact in proceedings under Chapter 96.

## V. Conclusion

We affirm the superior court's determination that the Commission erred in analyzing claimant's discharge under the provisions of N.C. Gen. Stat. § 96-14(2) and (2a) rather than the provisions of N.C. Gen. Stat. § 96-14(2b). The trial court's conclusion of law 4, and conclusion of law 5 to the extent that it ruled that N.C. Gen. Stat. 96-14(2b) is the governing statute, are affirmed. We vacate the remainder of conclusion of law 5, conclusion of law 6, and the decretal portion of the trial court's order.

We remand this matter to the superior court for further remand to the Commission. Upon remand, the Commission shall make appropriate findings of fact under N.C. Gen. Stat. § 96-14(2b) and determine whether there was a disqualification from unemployment benefits under that statute.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judge CALABRIA concurs.

Judge STROUD concurs in part and dissents in part by separate opinion.

STROUD, Judge, concurring in part, dissenting in part.

As to the first issue regarding N.C. Gen. Stat. § 96-14(2b) being the controlling statute, I concur with the majority opinion. As to the second issue regarding the findings under N.C. Gen. Stat. § 96-14(2b), I agree with the majority opinion that this case should be remanded to the Commission for additional findings of fact as to "[t]he status of claimant's provisional license and its relationship to a full license," but I write separately because I disagree that additional findings are needed as to whether claimant's failure to procure the full license

required for her continued employment was within her "power to control, guard against, or prevent." Thus, as to the second issue I concur in part and dissent in part.

As noted by the majority, the Commission made a finding of fact number 5 which reads, "The claimant took all training classes, etc. offered to prepare for the test, and she took the test on several occasions. The claimant was unable to pass the test." I would hold that this finding of fact provides a sufficient basis for the Superior Court's conclusion of law number 5, which concludes in pertinent part that achieving a "passing score upon the PRAXIS II examination . . . was within her power to control, guard against or prevent."

The evidence before the Commission and its findings of fact clearly establish that the claimant prepared for and took the PRAXIS test on several occasions, but did not pass it. Thus, the relevant question is whether passing the PRAXIS test is a matter that was within claimant's "power to control," or, stated negatively, if failing the test was something claimant could "guard against, or prevent." N.C. Gen. Stat. § 96-14(2b) (2007). In the context of this case, only the question of claimant's "power to control" her performance on the test is applicable. The Commission argues that passing the required test was not within claimant's "power to control" simply because she was unable to pass the test despite proper preparation. I disagree.

Under these facts, passing the test was under claimant's "power to control[;]" *id.*, the fact that she did not pass does not eliminate claimant's "power" to control this requirement. Certainly there could be a factual situation where passing a test required to obtain or retain a professional license was somehow rendered beyond a claimant's "power to control[.]" *See id.* For example, a claimant may have taken a required test, but due to errors within the test itself or in scoring the test, both clearly beyond the claimant's control, the test results were delayed or voided, and as a result the claimant lost the job for which the test was required. Here, where the claimant took the required test, and there is no indication of any problem other than the claimant's inability to pass, achieving a passing score on the test is, as a matter of law, within her "power to control." *Id.* I would hold that the superior court properly made this conclusion of law.

The only findings of fact lacking in the Commission's order are those relating to the details of claimant's provisional teaching license and its relation to her full license. As to the second issue, I therefore concur in remanding to the superior court for further remand to the

Commission for additional findings regarding the licensing process only. I also thus concur in vacating conclusion of law number 6 and the decretal portion of the trial court's order. I dissent in remanding for additional findings as to whether the claimant's failure to procure her full license as required for continued employment was within her "power to control, guard against, or prevent," *see id.*, and I would affirm the ruling of the superior court as to this issue. I also therefore dissent in vacating finding of fact number 5.